IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| VERONICA FELICIA CARPENTER, ) ) ) Plaintiff; ) ) vs. ) ) CAROLYN W. COLVIN, ) Commissioner of Social Security, ) ) Defendant. ) | 2:12-cv-0576-LSC |

MEMORANDUM OPINION

I.   **Introduction**

The plaintiff, Veronica F. Carpenter, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability, Supplemental Security Income ("SSI"), and Disability Insurance Benefits ("DIB"). Ms. Carpenter timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Carpenter was fifty years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a tenth grade education. (Tr. at 81.) Her past work

experiences include employment in fast food, housekeeping, and doing laundry. (*Id.*) Ms. Carpenter claims that she became disabled on February 14, 2005, because she has trouble sleeping, hears voices, and does not function well with other people. (Tr. at 84.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20

C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Carpenter meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. at 24.) He further determined that Ms. Carpenter has not engaged in substantial gainful activity since the alleged onset of her

disability. (*Id.*) According to the ALJ, Plaintiff's cocaine dependence and mood disorder NOS with psychosis are considered "severe" based on the requirements set forth in the regulations. (*Id.*) Additionally, the ALJ determined that Plaintiff's impairments met listings 12.03, 12.04, and 12.09. (Tr. at 26.) However, he found that these impairments would neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, if Plaintiff stopped her substance abuse. (Tr. at 30.) The ALJ found that absent consideration of substance abuse, Plaintiff possessed the following RFC: the ability to perform a full range of work at all levels of exertion, the ability to perform tasks which are simple in nature, the capacity to maintain attention and concentration of these simple tasks for two hour periods throughout an eight hour day, as well as the ability to tolerate contact with coworkers, the general public, and a low stress work environment with changes to the work setting that are gradual and well explained. (Tr. at 31.)

According to the ALJ, Ms. Carpenter would be able to perform any of her past relevant work if she stopped her substance abuse. (Tr. at 40.) He determined that the nature of her prior employment "does not require the performance of work-related activities precluded by the residual functional capacity the claimant would have if she stopped the substance abuse." (*Id.*) The ALJ concluded his findings by stating that

Plaintiff "has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision." (*Id.*)

## II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against

the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III. Discussion

Ms. Carpenter alleges that the ALJ's decision should be reversed and remanded for two reasons. First, she believes that the ALJ failed to give proper weight to the opinion provided by Plaintiff's treating psychiatrist, Dr. Glaser. (Doc. 8 at 8.) Second, Plaintiff contends that the ALJ did not afford proper consideration to the evaluations of the other medical examiners who diagnosed Ms. Carpenter. (Doc. 8 at 12.)

As Ms. Carpenter persistently used cocaine throughout the period these doctors examined her, it is important to note that Plaintiff bears the burden of proof to establish that she would be disabled even in the absence of substance abuse. *Doughty v. Apfel*, 245 F.3d 1274, 1276 (11th Cir. 2001). The ALJ correctly noted that the Social Security Act disallows the award of benefits when alcohol or drug abuse is a

contributing factor material to the finding of a disability. *See* 20 C.F.R. §§ 404.1535 and 416.935.

    A.    Treating Physician's Diagnoses

The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Plaintiff contends that the ALJ improperly evaluated her treating physician's opinion. (Doc. 8 at 8.) The opinion of a treating physician, such as Dr. Glaser, is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th

Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The Court must also be aware of the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in the doctors' evaluations of the claimant's "condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Dr. Glaser, Plaintiff's treating physician, saw Plaintiff first in March of 2005. (Tr. at 367.) Plaintiff continued meeting with Dr. Glaser throughout 2006. (Tr. at 404.) Plaintiff tested positive for cocaine during a drug screening in November 2006. (*Id*.) Dr. Glaser, apparently unaware of Plaintiff's recent positive drug test and

persistent substance abuse, concluded in a Supplemental Questionnaire that Plaintiff's limitations would exist absent consideration of substance abuse. (Tr. at 669-70.) This opinion was given by Dr. Glaser without knowledge of Plaintiff's continued substance abuse and was later contradicted by Dr. Glaser himself in October 2008 upon his discovery about the severity of Plaintiff's drug use. (Tr. at 473.)

Between April 4, 2008, and May 27, 2008, Plaintiff had three separate admissions to Physician Medical Center Carraway's psychiatric floor. (Tr. at 563, 609, 624.) Dr. Glaser stated that these admissions were due to cocaine-induced difficulties. (Tr. at 473.) When Plaintiff saw Dr. Glaser in October 2008 for a six-month follow-up, she reported no signs of illness, despite having not taken any prescribed psychotropic medication during the interim between visits. (*Id.*) Dr. Glaser filled out a Psychiatric Referral Form stating that although Plaintiff asserted she had not used cocaine in the past six months, an admission in April/May listed her as crack cocaine dependent (*Id.*) Dr. Glaser then surmised that Plaintiff may not actually be ill, but instead that her symptoms and signs might be cocaine induced. (*Id.*)

Plaintiff contends that the ALJ impermissibly failed to afford proper weight to Dr. Glaser's diagnosis as Plaintiff's treating physician. (Doc. 8 at 8.) However, the ALJ did give "significant weight" to the opinion of Dr. Glaser. (Tr. at 39.) Precisely,

the ALJ concluded that Dr. Glaser's 2008 opinion regarding Ms. Carpenter's condition should be given controlling weight, as opposed to his 2006 opinion, because his 2008 conclusion was made upon his discovery of Plaintiff's continued use of cocaine. (Tr. at 37.) Further, the ALJ based this conclusion in part on Dr. Glaser's report that Ms. Carpenter showed no signs of illness in 2008, despite being off of her medication for four months. (*Id.*)

Dr. Glaser's 2008 opinion was bolstered by Dr. Grayson, the attending psychiatrist at Physicians Medical Center Carraway. (Tr. at 624.) Dr. Grayson met with Plaintiff both in April and May of 2008 and opined that Ms. Carpenter "may well suffer schizophrenia but the worst problem currently is cocaine abuse." (Tr. at 598.) Dr. Grayson's evaluation of Plaintiff corroborates Dr. Glaser's conclusions regarding Plaintiff's substance abuse issues. The ALJ afforded greater weight to both Dr. Grayson and Dr. Glaser than to the other doctors who diagnosed Plaintiff because they were the only two physicians who treated Ms. Carpenter on multiple occasions. (Tr. at 39.)

Plaintiff maintains that if the ALJ determined Dr. Glaser's 2006 statements were inconsistent with his 2008 findings, the ALJ possessed a duty to recontact Dr. Glaser for clarification. (Doc. 8 at 11.) Plaintiff cites Social Security Ruling 96-5p in

support of this contention. (*Id.*) Plaintiff further contends that it was an "egregious error" for the ALJ to not recontact the treating source because the information from Dr. Glaser was inadequate or incomplete. (*Id.*) However, the ALJ is not required to recontact a treating source if the evidence at hand is sufficient to support a decision. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). Furthermore, the rules draw a distinction between clarity and consistency. That is, recontacting is required when statements made are unclear, not when they are inconsistent. *Couch v. Astrue*, 267 F. App'x 853, 855 (11th Cir. 2008). Here, the ALJ did not find the evidence insufficient or incomplete, but rather, inconsistent. (Tr. at 37.) The ALJ reasoned that Dr. Glaser's recently obtained knowledge of Ms. Carpenter's persistent drug use in 2008 sufficiently accounted for this inconsistency. (*Id.*) Indeed, Dr. Glaser clearly explained his reasoning for altering his opinion. (*Id.*) As such, the ALJ did not have to recontact Dr. Glaser.

For these reasons, the Court is of the opinion that the ALJ afforded the appropriate weight to Dr. Glaser's diagnosis and did not have to recontact Dr. Glaser for clarification.

  B. Other Examining Sources

Plaintiff alleges that the ALJ improperly discounted the evaluations given by the

other consultant examiners who diagnosed Plaintiff. (Doc. 8 at 12.) Specifically, Plaintiff asserts that the examinations and conclusions of Dr. Neville, Dr. Lowery, and Dr. Azrin were not granted appropriate weight by the ALJ. (Doc. 8 at 13.) The ALJ admits that he afforded less weight to the opinions of the three consultant examiners who examined Ms. Carpenter. (Tr. at 39.)

Plaintiff was examined by Dr. Neville in July 2005. (Tr. at 374.) Ms. Carpenter reported to Dr. Neville that she had not used cocaine since 2004, even though she had tested positive in March 2005. (Tr. at 355, 375.) Dr. Neville found that Plaintiff was schizophrenic and that her ability to function in a work environment with coworkers was moderately to severely impaired. (Tr. at 376.) Despite this conclusion, the ALJ afforded less weight to Dr. Neville's report because the evaluation was based primarily on Ms. Carpenter's subjective statements and self-reports. (Tr. at 39.) The Eleventh Circuit has established that "[o]ne sole mental evaluation that is based on subjective complaints and not on significant clinical findings is not sufficient to establish that the claimant has a mental problem that results in significant limitations, as neither the claimant's allegations nor unsupported diagnoses are sufficient, in and of themselves, to establish the existence or degree of an impairment." *Organaja v. Comm'r of Soc. Sec.*, 186 Fed. App'x 848, 850 (11th Cir. 2006) (quoting and affirming the opinion of

the district court). Additionally, the state agency consultant, Dr. Rankart, reviewed the evidence and noted that Dr. Neville's diagnosis and evaluation were not supported by the evidence because Dr. Neville had not received accurate information regarding the extent of Plaintiff's substance abuse. (Tr. at 393.) Therefore, the ALJ had sufficient basis to give less weight to Dr. Neville's opinion.

Dr. Lowery, a consultative examiner, examined Ms. Carpenter in September 2008 and determined that Plaintiff could not function in an employment setting without medication. (Tr. at 675.) Dr. Lowery based this conclusion on a determination that Plaintiff was mildly impaired in regard to her concentration and moderately impaired in regard to her immediate memory. (Tr. at 672.) As an initial matter, it is important to note that mental impairments which are controlled by medication are not disabling. *See, e.g., Bunch v. Heckler*, 778 F.2d 396, 400 (7th Cir. 1985) (finding that schizophrenia controlled by medication is not severe). Further, implicit in Dr. Lowery's evaluation was a belief Plaintiff was sober, based on her own self-reporting. (Tr. at 39.) As with the doctors previously discussed, this belief is contradicted by the record, which indicates that Plaintiff was hospitalized for cocaine use shortly before meeting with Dr. Lowery, despite alleging that she had quit using in March 2008. (Tr. at 673.)

Additionally, Plaintiff's assertions that she was experiencing hallucinations, paranoia, and delusions at the time of her diagnosis with Dr. Lowery are directly contradicted by her statements to Dr. Glaser at approximately that same time. (Tr. at 39.) Finally, as the ALJ noted, "[a]n inability to function independently is also clearly contradicted by the level of function reported by the claimant and her third party informants in claims-related forms completed just one month earlier." (Tr. at 473.) Taken in sum, because of Plaintiff's unreliable subjective self-reporting, the misstatements regarding a cessation of substance abuse, and the conclusions that are contradicted by other established evidence, the ALJ appropriately afforded less weight to Dr. Lowery's diagnosis.

Plaintiff was examined most recently by a consultative examiner, Dr. Azrin, in 2010. (Tr. at 522.) As was the case with both Dr. Neville and Dr. Lowery, Dr. Azrin based his conclusions of Plaintiff's condition, at least in part, on a misunderstanding of Ms. Carpenter's substance abuse problems. In October of 2010, Plaintiff stated that she had not used cocaine in three years, despite the numerous positives tests during that timeframe indicating otherwise. (Tr. at 90.) Continuing this pattern, Plaintiff stated, at the time of her examination with Dr. Azrin, that she had last used cocaine over a year ago, despite evidence to the contrary. (Tr. at 522.) Indeed, statements like

the following signify a larger pattern of inconsistencies given by Ms. Carpenter in relation to her drug abuse. In addition to noting these misgivings with respect to Plaintiff's discussion of her condition with Dr. Azrin, the ALJ also determined that Dr. Azrin's statements regarding Plaintiff's diminished mental capacity ran counter to the evidence established previously. (Tr. at 39.) These are appropriate reasons to afford Dr. Azrin's opinion less weight.

When determining how symptoms impact a claimant's ability to perform work activities, numerous factors are considered. Some of the factors include whether inconsistencies exist as to Plaintiff's statements and the evidence, and whether Plaintiff's subjective statements are in accord with the diagnoses provided by medical experts. *See* 20 C.F.R. § 404.1529(c). The ALJ properly weighed the competing concerns when reaching his conclusion. The two physicians, Dr. Glaser and Dr. Grayson, who met with Plaintiff on multiple occasions expressed their belief that her condition was heavily impacted by drug use, and, as established previously, the burden falls on the Plaintiff to prove that she would still be disabled in the absence of substance abuse. The findings of these doctors, taken with Plaintiff's repeated mischaracterizations about the extent of her cocaine use and the statements on record suggesting that Plaintiff can function in a work related environment all support the

ALJ's conclusion.

This Court finds no substantial error in the ALJ's decision to afford less weight to the consultative examiners. Further, Plaintiff did not meet her burden in proving she would otherwise be disabled in the absence of her cocaine use.

## IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Carpenter's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this <u>3rd</u> day of <u>June 2013</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[170956]